**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| CHRISTOPHER DRIVER, | ) |
| | ) |
|     Petitioner, | ) |
| | ) |
| vs. | )   Case No. 06-CV-449-JHP-PJC |
| | ) |
| WALTER N. DINWIDDIE, Warden, | ) |
| | ) |
|     Respondent. | ) |

**OPINION AND ORDER**

This is a 28 U.S.C. § 2254 habeas corpus action. Petitioner is a state inmate and is represented by counsel. Respondent filed a response (Dkt. # 7) to the petition and provided the state court record (Dkt. # 9) for the Court's use in resolving the claim raised in the petition. Petitioner did not file a reply to the response. For the reasons discussed below, the Court finds the petition for writ of habeas corpus should be denied.

*BACKGROUND*

During the evening hours of October 23, 2002, masked intruders kicked in the front door of Jean Ann Wintle's home located in Tulsa, Oklahoma. Ms. Wintle and her boyfriend, David Johnson, were watching television at the time. The intruders, armed with at least one firearm, demanded money. They bound the hands and feet of Ms. Wintle and Mr. Johnson with duct tape. They also placed duct tape over the victims' eyes and mouths. Ms. Wintle was hit in the head and knocked unconscious. Mr. Johnson sustained a stab wound and was also hit in the head. The intruders took Mr. Wintle's purse, Mr. Johnson's wallet containing $1,500.00, and additional cash. After ransacking the house looking for money, the intruders left the scene. Mr. Johnson was able to crawl to the kitchen, find a knife, and free himself from his bindings. He called 911. After receipt

of the 911 call, Tulsa police officers on patrol observed a car traveling at a high rate of speed. The police officers gave chase. After traveling 2 ½ miles at approximately 100 m.p.h., the car was unable to negotiate a turn and crashed into a house. The police observed three (3) individuals exiting the vehicle after the crash. All three were apprehended and later identified as Christopher Driver, Jermaine Wright, and Jamarro Wright. Jermaine Wright was identified as the driver of the car. Police officers recovered a backpack from the back seat of the crashed car. Inside the backpack were three (3) black ski masks, two (2) handguns, and Ms. Wintle's purse. They also found Mr. Johnson's wallet containing $1,500.00 cash on the front floorboard of the crashed car. In the trunk of the car, police recovered a baggie containing crack cocaine along with Jermaine Wright's driver's license.

As a result of those events, Petitioner Christopher Driver was charged and tried jointly with his co-defendants, Jermaine Wright and Jamarro Wright, in Tulsa County District Court, Case No. CF-2002-5478. At the conclusion of a bifurcated jury trial, Petitioner was convicted of Robbery with Firearms (Count 1), and Possession of a Firearm After Former Felony Conviction (Count 4).[1] As to Petitioner Driver, the jury recommended sentences of sixty (60) years imprisonment and a fine of $10,000 on Count 1, and ten (10) years imprisonment on Count 4.[2] The trial court judge

---

[1] Counts 2 and 3 were charged against co-defendant Jermaine Wright. Petitioner was also charged with two (2) counts of Assault and Battery and one (1) count of Resisting Arrest. All three of those charges were dismissed, either at preliminary hearing or at trial.

[2] Petitioner's co-defendants received sentences as follows: Jamarro Wright was sentenced to seventy (70) years imprisonment and fined $10,000 on Count 1, and ten (10) years imprisonment on Count 4. Jermaine Wright, who had two (2) prior felony convictions, was sentenced to forty (40) years imprisonment and fined $10,000 on Count 1, and forty (40) years imprisonment on Count 4. In addition, Jermaine Wright was also charged with and convicted of Attempting to Elude Police (Count 2) and Possession of a Controlled Drug (Count 3). He was sentenced to 180 days and fined $2,000 on Count 2, and to ten (10) years imprisonment and fined $5,000 on Count 3.

sentenced Petitioner in accordance with the jury's recommendation and ordered the sentences to be served consecutively. At trial, Petitioner was represented by Brian Martin and Shena Burgess, attorneys in the Tulsa County Public Defender's Office.

Petitioner appealed his convictions to the Oklahoma Court of Criminal Appeals ("OCCA"). On direct appeal, Petitioner, represented by Stuart W. Southerland, an attorney in the Tulsa County Public Defender's Office, raised the following eight (8) propositions of error:

I: Appellant should have been granted five of his own peremptory challenges pursuant to 22 O.S.2001, § 655.

II: Appellant was denied a fair trial as a result of the trial court's failure to follow the provisions of 38 O.S.2001, § 28(b)(4). It was reversible error for the trial court to refuse to excuse a biased law enforcement officer as a prospective juror who took prisoners into custody and transported them to jail.

III: Irrelevant testimony by an experienced police detective prejudiced Appellant and requires the reversal of his convictions or modification of his sentence(s).

IV: The State violated both Oklahoma statutory discovery law as well as Appellant's right to a fair trial pursuant to the United States Constitution.

V: Appellant's convictions for both Robbery with Firearm and Possession of a Firearm After Former Conviction of a Felony violate 21 O.S.2001, § 11. Count IV, Possession of a Firearm After Former Conviction of a Felony, should be reversed with instructions to dismiss.

VI: The trial court should have instructed the jury as to the applicability of 21 O.S.2001, § 13.1. At the very least, it was error for the trial court to assume that he had no discretion to instruct the jury as to the statutory parole limitations in Count I. Even if this court continues to hold that it is not error to so instruct, it is incorrect to hold that a trial court *cannot* instruct a jury as to the law in 21 O.S.2001, § 13.1.

VII: It was error to deny Appellant's motion for a mistrial when the jury failed to come to a unanimous verdict, at least with regard to Count One.

VIII: The accumulation of error during Appellant's trial requires reversal or modification.

(Dkt. # 7, Ex. 1 (emphasis in original)). On July 15, 2005, in Case No. F-2003-1347, the OCCA found no merit to Petitioner's claims. For that reason, the state appellate court affirmed the Judgments and Sentences of the trial court. Dkt. # 7, Ex. 3. Petitioner did not file a petition for writ of *certiorari* at the United States Supreme Court nor did he seek post-conviction relief in the state courts.

On August 31, 2006, Petitioner filed his federal petition for writ of habeas corpus (Dkt. # 1). Petitioner identifies one (1) ground for relief, as follows:

> Mr. Driver was deprived of a fundamentally fair trial when a state's law enforcement witness testified that Mr. Driver had previously been to prison.

(Dkt. # 1). Respondent filed a response (Dkt. # 7) to the petition and asserts that under 28 U.S.C. § 2254(d), Petitioner is not entitled to habeas corpus relief.

*ANALYSIS*

**A. Exhaustion/Evidentiary Hearing**

Before addressing the claim raised in the petition, the Court must determine whether Petitioner meets the exhaustion requirement of 28 U.S.C. § 2254(b) and (c). See Rose v. Lundy, 455 U.S. 509, 510 (1982). Respondent concedes and the Court agrees that Petitioner's claim raised in the petition was presented to the OCCA on direct appeal and is exhausted.

The Court also finds that Petitioner is not entitled to an evidentiary hearing. See Michael Williams v. Taylor, 529 U.S. 420 (2000).

**B. Claim adjudicated by the OCCA**

When a state court has adjudicated a constitutional claim, a petitioner may obtain federal habeas relief only if the state decision "involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Bell v. Cone, 535 U.S. 685, 694 (2002); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). In this case, the OCCA adjudicated Petitioner's claim on direct appeal. Therefore, the claim shall be reviewed pursuant to § 2254(d).

As his sole proposition of error, Petitioner asserts that the testimony of a Tulsa Police Officer during the first stage of Petitioner's two stage trial deprived Petitioner of a fair trial. See Dkt. # 1. The record reflects that during the first stage of the bifurcated trial, the State called Tulsa Police Detective Brent Eric Sanders as a witness. Detective Sanders testified that at the time of this incident, he was a patrol officer and that he had been employed by the Tulsa Police Department for "almost four years." See Dkt. # 9,Tr. Trans. Vol. IV at 842. He stated that he was the police officer who transported Petitioner to the detective division after Petitioner's apprehension. Id. at 845. During direct examination by the prosecutor, the following exchange took place:

> Q: And once he got in the car, on the way back, did he make any other comments to you?
>
> A: Yes. He kept saying something about he could give me some big guys in Tulsa, and I asked him what the big guys were, and he started talking about cocaine and said that he could not go back to prison or he would be killed.
>
> Q: All right. Did he make – now other than your question about what big guys, did you ask him – were you interrogating him or asking him questions during this?
>
> A: No. This was just a conversation that he initiated that I just – it kind of got my curiosity going when he was talking about big guys.
>
> Q: Now did he make any other comments to you during the course of your transporting him back to the detective division?

5

> A: Just whenever we got on the elevator to go up to the second floor of the detective division, he stated that he had had a dream some time back that he would be arrested for the same thing he was arrested for that night.
>
> Q: Did he make any – do you recall him making any other comments to you, either in the police car or back at the detective [division] before you turned him over to the detectives?
>
> A: No.
>
> Q: Now were any of those comments to you as a result of your questioning him about the incidents of the evening?
>
> A: No, sir. They were completely unsolicited by any officer.
>
> Q: And this all happened within Tulsa County?
>
> A: Yes.
>
>> Mr. Anderson: I have no further questions at this time, your Honor.
>>
>> THE COURT: Let me break my jury for a moment out in the hallway, and I will call you back when I need you.
>
> (Whereupon, the jury was excused from the courtroom and the following proceedings were held outside their presence:) . . . .

(Dkt. # 9, Tr. Trans. Vol. IV at 847-48). After the jury left the courtroom, the trial court judge invited Petitioner's defense counsel to make a record. Counsel objected to Detective Sanders' testimony on the grounds that it was inconsistent with the discovery they had been provided and because the Detective stated that Petitioner did not want to go back to prison. Counsel moved for a mistrial. Id. at 849. After hearing argument from counsel, the trial court judge decided to reserve ruling on the motion for mistrial, directed counsel to brief the issues raised by the police officer's testimony and its impact on the trial and the defendants' rights, and upon the jury's return to the courtroom, issued a strong admonishment, as follows:

> Ladies and gentlemen, from time to time during a proceeding, the Court will give you a cautionary or special instruction. This is one of those times. You are instructed that you are not to consider at all any of the testimony that you have heard from Detective Sanders.
> I have reviewed the underlying reports in this case, and I instruct you that the testimony from Detective Sanders is not credible and has no support at all in any of the other reports of this case.
> His testimony is not to enter into your deliberations in the slightest, and it would be error and violation of these instructions if you allowed that to enter into your deliberations.

(Id. at 856). At the conclusion of the second stage proceedings, the trial court judge denied the motion for mistrial, stating as follows:

> There is no doubt about it that it was objectionable testimony. That is why I took the extraordinary step of stopping it myself, and sua sponte giving you a record, and then, on my own, giving the jury just about the strongest admonition I could ever give a jury.
> I have now – now I have the benefit of seeing all of the other evidence that was presented. I have the evidence. I have the benefit of seeing, actually, what was the result of the trial to see if I could perceive any potential prejudice, real prejudice on the issues of punishment, and I note that defendant Driver got 60 years on the robbery charge, ten years on the AFCF charge. Jamarro got 70 and ten. He got the same on the AFCF. He got ten more than Mr. Driver on the robbery.
>
> * * * * *
>
> I do not believe that, given my strong admonition, and given the other evidence that was introduced to the jury, and looking at the sentences, that this objectionable disclosure influenced the verdict. I am therefore denying your motion for mistrial.

(Id. at 1258-59).

Petitioner raised this claim on direct appeal. The OCCA rejected the claim, stating as follows:

> we find the unusually strong admonishment cured the officer's overly broad response to the question by the prosecutor. *Powell v. State*, 2000 OK CR 5, ¶ 103, 995 P.2d 510, 533.

(Dkt. # 7, Ex. 3).  The OCCA further found no cumulative effect of the errors identified by Petitioner. (Id.)

"[E]rrors in the admissibility of evidence are not grounds for habeas corpus relief absent fundamental unfairness so as to constitute a denial of due process of law." Martin v. Kaiser, 907 F.2d 931, 934 (10th Cir. 1990). In a due process challenge to the admission of evidence, a habeas petitioner is not entitled to relief unless he can demonstrate that the evidence introduced is "so unduly prejudicial that it renders the trial fundamentally unfair." Welch v. Sirmons, 451 F.3d 675, 692 (10th Cir. 2006) (quoting Payne v. Tennessee, 501 U.S. 808, 825 (1991)). In light of the extraordinary measures taken by the trial court after the police officer's objectionable testimony, Petitioner has failed to demonstrate that the inadvertent comments made by Detective Sanders rendered his trial fundamentally unfair.  The trial court's strong admonishment to the jury to disregard Detective Sanders' testimony was sufficient to cure any error. See Welch, 451 F.3d at 691; Patton v. Mullin, 425 F.3d 788, 800 (10th Cir. 2005). There is a general presumption that a jury follows a trial court's instructions. Greer v. Miller, 483 U.S. 756, 766 n.8 (1987) (stating "[w]e normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant" (internal citations omitted)); Battenfield v. Gibson, 236 F.3d 1215, 1225 (10th Cir. 2001) (citing Weeks v. Angelone, 528 U.S. 225 (2000)). Furthermore, the record does not suggest that Petitioner was prejudiced by the testimony.  Petitioner has failed to demonstrate that the OCCA's adjudication of this claim was contrary to or an unreasonable

application of Federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d). Accordingly, Petitioner's request for habeas corpus shall be denied.

## *CONCLUSION*

After carefully reviewing the record in this case, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws or treaties of the United States. His petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1. The petition for a writ of habeas corpus (Dkt. # 1) is **denied**.
2. A separate Judgment shall be entered in this case.

DATED THIS 20th day of August 2009.

James H. Payne
United States District Judge
Northern District of Oklahoma